Freeland Ham v. Commissioner.
Ham v. Commissioner
Docket No. 46310.
United States Tax Court
T.C. Memo 1955-161; 1955 Tax Ct. Memo LEXIS 178; 14 T.C.M. (CCH) 604; T.C.M. (RIA) 55161; June 21, 1955
William B. Tyson, Jr., Esq., for the petitioner. H. Fenton Day, Jr., Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: This proceeding involves a deficiency of $1,754.64 in income tax determined by respondent for the calendar year 1947. The issues are whether petitioner assumed a debt, owed by another person to a corporation of which both were stockholders, as part consideration for the purchase of stock representing the other stockholder's interest in the corporation and, if so, whether petitioner received a dividend upon the forgiveness of such debt and realized a short-term capital loss upon resale of the stock. Findings of Fact Certain facts have been stipulated and are hereby found. Petitioner, *179 a resident of Timmonsville, South Carolina, filed an individual income tax return for 1947 with the collector of internal revenue for the district of South Carolina. Prior to June 1947, petitioner and T. C. Player each owned 50 per cent of the outstanding stock in Ham and Player, Inc., a corporation engaged in the furniture and undertaking business in Timmonsville. As of May 31, 1947, Player was indebted to the corporation for withdrawals made by him in the amount of $7,350.61 and petitioner was indebted to the corporation for withdrawals of $5,584.23. Petitioner and Player executed a written agreement on June 27, 1947, whereby Player, in consideration of $10,000 and the cancellation of his indebtedness above-described, agreed to assign all his stock in the corporation to petitioner. Neither the corporation nor J. A. Perry, petitioner's future associate, was a party to this agreement. Nor was a written agreement of any sort ever entered into between petitioner and Perry. On June 27, 1947, Player endorsed and assigned to petitioner stock certificates representing 18 shares and to Perry stock certificates representing 12 shares of stock in Ham and Player, Inc.
By amendment, dated *180 August 6, 1947, to the charter of the corporation, the corporate name was changed from Ham and Player, Inc., to Ham and Perry, Inc. The latter was not incorporated as a new corporation separate and distinct from Ham and Player, Inc.; only the name of the corporation was changed. On December 31, 1947, the debt of Player to Ham and Perry, Inc., in the amount of $7,350.61 was canceled on the corporate books by a debit to the surplus account and a corresponding credit to "Accounts Receivable" in the name of T. C. Player. Perry was ignorant of the way that this item was treated on the corporate books or on the corporation income tax return for 1947. J. A. Stewart, who supervised the keeping of the corporate books both before and after the name change, obtained the approval of petitioner before the item of $7,350.61 was treated in this way on the corporate books. Stewart was never instructed to transfer this indebtedness to Perry's account as owing to the corporation, and Player was never asked to pay the $7,350.61, which represented his original indebtedness to Ham and Player, Inc. In 1950, petitioner signed a sworn statement that he had agreed to save Player harmless from the debt owed *181 to Ham and Player, Inc., on May 31, 1947. Payment of the $10,000 which was mentioned in the written agreement between petitioner and Player was made by Perry in the amounts of $6,000 on June 27, 1947 and $4,000 on July 11, 1947. Petitioner did not assume the liability for Player's indebtedness to the corporation. Opinion Although petitioner's primary position is that there was no agreement between him and the other stockholder of their corporation, a subject on which the evidence is obscure to say the least, we think the real question is whether petitioner "assumed" the obligation of the other stockholder on the corporate books. If he did, then respondent's determination that the cancellation of that debt was a dividend to petitioner does not appear to be seriously resisted. Cohen v. Commissioner, (C.A. 6) 77 Fed. (2d) 184, certiorari denied 296 U.S. 610. Were it incumbent upon petitioner to demonstrate that there had been no assumption, it might be difficult to find in this record the basis for concluding that he has sustained his burden of proof. But the deficiency notice does not determine that there was an assumption of the indebtedness by petitioner, *182 [1] there was no reason for him to agree to assume the indebtedness, the statement in either the original agreement or petitioner's affidavit with respect to it does not speak in terms of an assumption and it seems highly improbable under the conceded facts that an agreement to assume would ever have been made. We are satisfied from the testimony and the logical inferences to be drawn from the surrounding circumstances that the most that petitioner was called upon to do was to permit the indebtedness of the other stockholder to be canceled on the books of the corporation. Even respondent *183 does not suggest that this would constitute a dividend to petitioner. Whether it could have been treated as a dividend to the other stockholder, whose tax liability is not before us, we need not attempt to consider. The words used in the supposed contract covering the sale of the stock are: "In consideration of the sum of * * * ($10,000.00) * * * and the cancellation of all indebtedness due by me to the Corporation * * *" [Italics added.] The statement in the affidavit is: "$10,000 in cash * * * and the remainder was to be in the agreement to save Mr. Player [the other stockholder] harmless from the amount of money that he owed Ham and Player, Inc. * * *" [Italics added.] If in fact, as respondent contends, petitioner was the purchaser of the stock and thereby became the corporation's sole stockholder, it was obviously a simple matter for him to have the corporation cancel the indebtedness. But there was no reason for him to agree to pay it. If, as petitioner contends, the intention and ultimate effect of the transaction, whether by one step or two, was the sale of the stock to a third person who became co-owner of the corporation with petitioner, there was even more reason *184 why petitioner would prefer to have the indebtedness canceled rather than be liable to a corporation of which he was not the sole owner. In either event, there would be every reason for the retiring stockholder to insist upon some agreement with respect to his indebtedness to the corporation. But this could be dealt with as readily by cancellation as by payment from a third person. The debt was in fact canceled and we think it in the highest degree improbable that any other treatment was ever even considered by any of the parties to the transaction. This version of the facts renders reasonable a phase of the matter which would otherwise be incredible. The deficiency notice, after referring to the purchase of the stock by petitioner, cancellation of the debt and its asserted result of constituting a dividend to petitioner, proceeds: "Inasmuch as the shares of stock acquired from T. C. Player were immediately sold by you for a price of $10,000, it is held that you sustained a short-term capital loss of $7,350.61 * * *" [Italics added.] If petitioner in fact assumed the debt and was thereby required to pay in cash the seven odd thousand dollars to which reference is made and immediately *185 turned around and sold the stock without taking that payment into account, it would not have constituted the action of a reasonable person - certainly not that of an experienced business man. But if petitioner was merely consenting to the cancellation on the corporate books of an amount which he would not in any event be required to pay out of his own pocket, the amount of cash which he paid for the stock and the amount of cash which he received were identical and there was neither gain nor loss from the simultaneous transactions. This assumption is so much more reasonable than that upon which the deficiency notice proceeds that combined with the other circumstances it causes us to conclude that there was never at any time an assumption by petitioner of the indebtedness to the corporation and we have so found as a fact. There being no debt by him to the corporation, its cancellation did not constitute a dividend to him. To adjust for certain conceded items, Decision will be entered under Rule 50. Footnotes
1. In the deficiency notice, under "Explanation of Adjustments," it is stated: "In June 1947 you purchased from T. C. Player all the shares of stock held by him in Ham & Player, Inc., for a consideration of $17,350.61, consisting of $10,000.00 in cash and your agreement to save the seller harmless from a debt of $7,350.61 which he owed to the corporation. The abovementioned debt was cancelled and debited to surplus by the corporation in December 1947. It is held that such cancellation constituted dividend income to you under section 22(a) of the Internal Revenue Code↩. * * *"